The first case on calendar is Taubenfliegel v. EGS Financial Care. Good morning, Mr. Fischbein. Good morning. May it please the Court. We're here, I think, to finally bring closure to a very important issue facing consumers in terms of how much to give meaningful disclosure as to how much is the debt that they owe, where it is accruing interest and or other charges. There are, I would say, about five cases from the Eastern District of New York that hold, according to Carlin, that additional information has to be given beyond what Avila says, because in Carlin it addressed a 1692G issue and Avila was 1692E. Interestingly, the collection industry has appealed this decision and two other decisions, which have already been orally argued before this Court. So we feel that the Second Circuit gave further clarification in its holding in Taylor v. Financial, which is set forth on page 25 of our initial brief, if I could have permission to read. In Carlin we explained that a collection notice, notice that it doesn't say there's no qualification. It's a categorical statement of any collection notice fails to satisfy section 1692G if it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase. Can you explain what that actually would mean? That is to say, that sounds like, if you take that literally, that what the notice has to say is here's what you owe today, here are the interest and fees that are going to accrue, and here's a chart. If you pay tomorrow, it will be this much. If you pay the next day, it will be this much. If you pay the next day, it will be this much. If you pay the next day, it will be that much, indefinitely into the future. Is that what you're suggesting? No, I'm suggesting really what Carlin sets forth. Well, that's what it says, I thought, or that's what I thought you were asking for. So tell me what exactly the notice is supposed to say. I believe, Your Honor, that I think it will be sufficient to say what footnote 3 sets forth in Carlin, citing Jones v. Midland, where it states, this amount consists of a principal of X dollars, accrued interest of X dollars, and fees of X dollars. The balance will be- Wait, why would it, that's- As of what date? Accrued interest as of what date? It'll be- Because if it's the date the notice is sent, that'll be different from the amount owed, the date the notice is received, which will be different from 3 days later when the consumer writes the check. Right. I believe that the FDCPA mandates that, and it said that the balance as of the date of the letter- But that is what this person got, right? I don't think that, maybe I'm mistaken, but I did not think you were arguing that the letter misstated the amount that was in fact due as of the date of the letter. That is a good start. I want to know, is that accurate, first of all? Am I right that you are not saying that the amount stated in the letter was inaccurate as of the date it was sent? I think- That's a simple question. Are you contesting whether the amount stated was accurate as of the date it was sent? I think it was accurate as of the date, yes, it was sent, yes. Okay, so then the question that I think Judge Radji and I were both pursuing is what else needs to be said? I'm not sure why it would need to be broken down into this was the principle, this is the accrued interest, etc. I'm not sure how helpful that is. But I thought you were also suggesting that the letter would have to give an account of what would be due at any given date in the future. When the check might be written by the consumer, when it might be received back by the creditor, at the date that it was perhaps received in the mail a few days after the date as of which it was accurate. So what has to be said about the future? What has to be said about the future is what I've set forth from footnote three in Carlin and in addition. This balance- Tell me exactly what it is. I'm just trying to understand what you're asking for. Just tell me exactly what the letter is supposed to say. It should say that this, it should break down as of the date of the letter that this is the amount. This is the principle amount. This is the amount of accrued interest and fees. And if there are other charges, there can be a box as many collection- Why does that convey, what you've said so far it seems to me doesn't convey any useful information to me as the debtor because I already know I have to pay whatever, $1,600. It might be interesting to me to say that was a principle amount of $1,200 plus this much interest and this much accrued interest. But that doesn't give me any help in knowing what I owe as of the date of the letter in total because I'm interested in the total. And so far you haven't told me anything about what needs to be said about the future, which I thought was the whole point of this case. Yes, absolutely. So in the future it should state that this balance will continue to accrue interest at a rate of whatever percentage it is. And if there's going to be late fees, then it should set forth late fees will be every 30 days or in that fashion. So now the least sophisticated consumer, it seems to me, is put by that in some position where they're going to have to make some kind of calculation, right? A mathematical calculation of accrued interest. I mean, wouldn't it be better if you got like exactly how much interest is going to accrue tomorrow and the next day and the next day? I think that I don't know if it has to be broken down day by day, but I think we — Month by week? Month by month? Perhaps month by month. Well, perhaps isn't that helpful to the debt collection industry? I'm trying to figure out some way of conveying what's going to be a good letter because otherwise people are going to be continually sued on if they give an interest rate, the next person standing at the podium in your shoes is going to be arguing that that's not really very good because if you say it's compound interest at a rate of 29 percent annually, how is the least sophisticated consumer supposed to know what they would need to pay if they're paying three days after the initial letter with the amount that was then due and owing? I think that Carlin really has adopted the credit card standard. And when your Honor mentions the least sophisticated consumer, we are talking about consumers who have most of the time credit card debt. And also, may I remind — Most of which they have not paid in part because they did not understand. Otherwise, they wouldn't be in this position. I mean, if you talk to the least sophisticated consumer in real life, you will hear things like, oh, I'm in pretty good shape. I still have $20,000 in the bank, meaning they still have $20,000 in credit. You're talking to people who don't pay off their balances because they don't really understand that if they only pay the amount that's asked for on the bill each month,  I'm not persuaded that giving people a set of percentages about the future is really any help to anybody at all. So what I'm concerned about is, if we're trying to figure out what would be a reasonable letter, are we saying that these defendants are going to owe a lot of money in penalties and class actions and so on because they didn't give essentially useless information to the consumer? Furthermore, that if we do require what you're suggesting, that in the next case it's going to be argued that that's not really enough and that there's a bigger and better disclosure that would be like a three-page letter with a chart saying, pay by this day, you pay this amount, pay by that day, you pay that amount. I believe that if the Second Circuit, just like the Second Circuit, came out with some type of explanatory language in Avila, which is good for 1692E, then the Second Circuit — Excuse me, though. That just is exactly the problem. We tried to set out something in Avila, and here you are saying, no, that's not really a safe harbor because it doesn't satisfy all the different statutory requirements. Now you're telling me, create another safe harbor, and that might work for you, but I'm not sure it's going to work for successors coming and suing people again. No, because the difference is, is because we on plaintiff's side, on the debtor's side, have accepted that this is a sufficient, this is good language for 1692E for subsequent letters to let the debtor know that there's certain — Why isn't your problem completely solved by the fact that this letter and every letter from collection agencies has a telephone number? You call the telephone number, and they'll tell you how much you owe today. In fact, the universal experience is that the telephone, the person at the other end of the telephone will bargain with you and allow you to pay half or two-thirds or 10 percent or 10 percent a month or whatever. In other words, you're straining at a gnat. You are making a huge issue of something, which is resolved very easily by making a phone call. Your Honor, in the Seventh Circuit case of Miller v. McCown, which of course the Second Circuit doesn't have to follow, the Seventh Circuit looked upon forcing a debtor to have to call the collection agency. Forcing the debtor to — isn't it easier to call the collection agency than it is to sit with your calculator and figure out what 3.25 percent compounded per quarter is going to amount to, especially if you don't know what the beginning date is of the quarter, plus the penalties? You're proposing that the debtor is going to do much more work than dialing 10 numbers. The Seventh Circuit was not impressed with having to call — They're in Chicago. I understand, Your Honor. I understand. As I said, this Court is not — But, you know, when you talk about we on the plaintiff's side, I'm not sure whether you had a convention and made a decision that what you're proposing today is going to satisfy everybody, but I suspect not because there's another case that's been argued recently where it was argued that the Seventh Circuit, which is sort of what we followed in Avila, has no right to set a safe harbor language at all. There's no such thing as safe harbor language because that's amending the statute. So other people are out there making arguments that go quite beyond what you're making. So where does it stop? How do we ever get to a point where we've said, Look, if you say this much, that's good enough. Why don't we stick to what we've said in the past on that front? Your Honor's raised a good point concerning how far attorneys will go, but I don't think it's an extension of the statute, and I think that the industry has, since Miller and then since Avila, has accepted that in the Second Circuit for 1692e. It's not that the court has to now go and set another safe harbor language. The court set it forth in Carlin. The court made it clear that when a collection letter accrues interest or other charges, the debtor has to be told in a meaningful fashion, not just there's a possibility of further charges and interest in call this number. What I wanted to say before was that many debtors, I'm sorry, many debt collectors and collection representatives are not so nice, and that's why we have cases also concerning conversations. In Carlin, what we actually held was that it was misleading to say you would owe a certain amount by a particular date in the future when that amount was really an estimate and was not necessarily strictly accurate, and that was the problem that was being addressed there. It was not a case in which the letter had simply said, here's what the current amount of the debt is. It will continue to grow in the future. Please call such and such number if you have any questions. It was not that kind of letter at all. It was a letter that the court found to be misleading about what was going to happen in the future, and one of my concerns is the more information a collector tries to put into the letter, the greater the risk that something is going to turn out to be not quite accurate. Suppose they did put in a big chart. It had better be, to the penny, exactly correct as to each day, because if it goes wrong, then there's going to be a lawsuit saying it's inaccurate. I'm just having trouble understanding why the notice in Avila is not enough. Because Avila talks about 1692E, and Carlin discusses 1692G. Explain to me why the difference. Why does that make a difference in terms of the kind of information that the consumer should be given? Because 1692E involves deception. So in any subsequent letter, the debtor should know that there is a possible accrual of interest or other charges. 1692G from the statute discusses amount of the debt, which should be given in a meaningful fashion. Right, but you have agreed that the amount of the debt here, as stated on the date the letter was sent, is accurate. That is in sharp contrast to Carlin, where the information the debtor was given as to what was owed was a future estimate that was possibly not correct. So the debtor here is given correct information as to the debt as of the date of the letter. Then it's told it can increase based on interest and fees, and then it's given a phone number that it can call. And I'm not sure. I think what we're struggling with is what more do you want that debtor told that is going to be meaningful? I think, Your Honor, that I've, I think, as I said, Johnson v. Midland, quoted in Carlin, gives a nice suggestion. And in addition, I believe that... Suggestions may indicate what might be done, but it doesn't necessarily indicate what has to be done. I mean, Carlin does reaffirm the safe harbor language of Avila. It says we are not ignorant of the safe harbor statement we formulated in... And does not depart from it. So in any event, though, going back to what you're saying is the suggestion, we were trying to figure out what you're saying is the required disclosure that must be made and was not made here. I think that Carlin went beyond Avila because, as Taylor stated, as I read before, Taylor, I think, is a, while the consumer lost in Taylor, Taylor gave a beautiful clarification. As I stated before, in Carlin, we explained that a collection notice, it doesn't say in Carlin we explained that a collection notice concerning a payoff statement fails to satisfy 6092G. Right, but you started with Taylor, prompting Judge Lynch's question about whether it's language taken literally requires a day-by-day chart of the amount owed ad infinitum. I mean, this was Judge Ross's point when she said that taking in isolation, it suggests exhaustive disclosure, and she thought that was inapt in light of Avila and the safe harbor language that Carlin didn't depart from. So the suggestion is that what you're asking for by citing Taylor seems to be that ad infinitum chart. I don't really see where Carlin didn't depart from Avila. Stick with Taylor, since you came back to Taylor and said that Taylor's language is what is required. And we started out by asking you, how is that anything than a day-by-day chart forever? I'm sorry, I don't, I guess, how? You're quoting the language in Taylor that says that it has to be information that allows the consumer to determine the minimum amount she owes at the time of notice, what she will need to pay to resolve the debt at any given moment in the future. And that's what's problematic here. But that's what the Second Circuit held in Carlin, which was clarified in Taylor. So I'm just quoting from what the... The judgment you're appealing says you can't read that language in isolation. And the reason for that is that it basically obliterates the safe harbor. The safe, if Your Honor's talking about the safe harbor in Avila, again, that safe harbor address 1692E. All right, we understand that point. Okay. You've reserved a couple minutes rebuttal. We'll hear you then. Thank you. Good morning, Your Honors. Jeffrey Young from Reed Smith on behalf of the appellee here. I think this case... Reed Smith? Reed Smith, correct, Your Honor. The brief is submitted by Sessions Fishman? That is correct. I've been specially appointed to do the argument. All right, thank you. Yes. So I think this case, contrary to what my adversary has said, this is not a case about sweeping changes to notices in accordance with the FDCPA. I mean, if anything, this reflects Plaintiff's Counsel and the Plaintiff's Bar trying to put a square peg in a round hole, taking what I think is a pretty aggressive stance in that Avila is no longer good law in this circuit based on what Carlin has said and what Taylor has said, including what opposing counsel has quoted from Taylor. I mean, the fact of the matter, and I think Judge Ross's decision in the lower court, perfectly distinguishes why Carlin and Taylor do not obliterate or abrogate what was decided in Avila. I think Judge Lynch, perfectly, who was on the panel in Avila, tried their best to give guidance to the industry on how best to deal with the scenario where there is a dynamic debt, particularly with accrued interest, and the safe harbor language has served the industry well over that time. I think, in particular, the situation in Carlin really – in terms of accrued debt is something I don't think we can impose, which would be a letter that said, here's the amount that's due today. If you pay that any time by the end of this month, you're done. I think if it said that, you wouldn't have any problems at all in terms of trying to predict the future. And the problem is trying to collect each little nickel that you know you're not going to get anyway because you know you're prepared when the person does call to haggle over what the settlement would be. And if that happened, then there wouldn't be any of these problems. It's trying to keep the debt dynamic. And I don't think that means that you have to say everything else is forgiven. If there's a term in Assad-Quen, if you pay by this date, this amount will end it. I think that would actually be the most helpful thing to the least sophisticated consumer. But that's free advice, and it's worth exactly what you paid for it. So I don't think that's anything that a court could impose because that would be affecting the substance of what's happening, not the disclosure. Well, and I think Carlin does highlight that there are different scenarios. In that case, that was a payoff statement, and that's post-lawsuit. A lawsuit was filed. A payoff statement was sent to the debtor after the lawsuit was filed. That is not your typical kind of dunning notice, for lack of a better description, sent to a debtor just advising them what amount is owed as of the date of the letter. And, again, my adversary keeps trying to create a new standard separate from Avila and trying to create Carlin the new standard of the circuit. But, again, these notices are not in a black box. I think, as Your Honor pointed out, there's a phone number. There's correspondence and address. The debtor is always available to pick up the phone or contact who sent the letter and to figure out what amount today, as of that phone call, they would pay and if that satisfies the debt in its entirety. There are some things that you just can't do in terms of predicting the future. And just to put a finer point on the fact that Carlin and Taylor are all decisions issued by different panels of this court, Carlin and Taylor cannot have overruled or abrogated what was done at Avila. A panel can't overrule another panel in that regard. Counsel distinguishes that by saying that they deal with different statutory sections, though. Well, the two statutory sections are not mutually exclusive. One provision, 1692E, deals with false misleading statements. That is read in conjunction with 6292G. So a statement that has to comply with 6292G also has to comply with 6292E. So when you state the amount of the debt, it also cannot be false and misleading. And that's been the case along this circuit since Avila. So there is no real distinction of merit between those two provisions. And, in fact, the footnote 3 to Carlin kind of, I think, Judge Radji, as you were hinting at, is footnote 3 explicitly says Avila references a basically harkens back that Avila had two proposals for safe harbor. There was the one that's an issue in this case, which is there's accrued interest in fees that will continue to accrue, which will change the amount due over time. But there's also the more detailed safe harbor that Avila spoke about in that case. And that's what's referenced in footnote 3. And that's where Carlin essentially is saying Avila is still a good law, reminding everyone, we did prefer this other safe harbor language that we mentioned in Avila. But, again, it's just a suggestion, which I think just further makes clear that Carlin was not here to change what the standard in Avila was. And I think that footnote actually crystallizes the point. The other thing I'll just say, and, again, this is Judge Ross in the lower court, had a very thorough, well-reasoned decision. She distinguished why Carlin was not applicable here, why Taylor did not change what was decided in Avila. And I think it should be affirmed. The only last point I'll make, unless there's further questions, I do know in the appellant's reply brief, they also seek to overturn Judge Ross's decision because she made factual findings. There's just no evidence of that. The factual findings that plaintiff's counsel suggests that were decided were that the amount in dispute, or the amount due, I should say, was literally correct in the letter, that that was not a finding of Judge Ross. The finding in Judge Ross was dealing with the allegations in the complaint, which all related to whether the interest and statements about accruing interest and fees were stated correctly and not in a misleading way. At no point was Judge Ross opining on whether the amount in the letter itself was literally accurate. I think Mr. Fishbein, I don't want to put words in his mouth, but I thought he conceded when he was up here that there was not a contention that the amount was inaccurate as of the date of the letter, that that's not in dispute. I didn't ask him, but maybe I should. I don't think that the appellant is contesting that as far as it went, the statement that interest and fees would continue to accrue is also accurate as far as it goes. The argument is that it's insufficient because he wants more detail about exactly what will accrue on exactly what schedule. And he'll have a chance, if I misunderstand, to correct me. Certainly, and that was my understanding as well, Your Honor, except that there was an argument in the reply brief at the back end about whether Judge Ross also made factual findings, and that is a basis for overturning her decision. I think that there is no basis to overturn her decision in that regard because she didn't make any factual findings. She was only relying on the allegations in the complaint, which had nothing to do with the literal correctness of the statement of the amount in the letter at issue. So unless there's no further questions, I'll yield the rest of my time. Thank you. We'll hear rebuttal. Your Honors, first of all, I'm really shocked that my adversary would say that there is no distinction between 1692G and 1692E, and I think that that's set forth. Could you explain that distinction exactly? What exactly makes a statement that passes under the one statute not pass under the other? What language in the statute are you relying on for that? 1692E has a list of various deceptions. 1692E10 is probably general, and 1692E general concerning misrepresentations and deception. 1692G is what's, and 1692E applies to any communication with a debtor. 1692G only applies to the initial written communication with the debtor. So we are only asking that the Carlin standard, which is, let's say, really what's set forth in any credit card statement. We're not saying that the collection agency should give less detail than a credit card company does. We're saying, and when Your Honor suggested setting forth an amount in the future, I think Judge Feuerstein suggested that in Kolganoff. I don't remember the name of the defendant, but a number of years ago, I believe, she suggested that. So we've found that since Carlin, especially in the student loan area. See, this is what I'm having a problem with. So 1692G, you say, is different because it's about the initial communication and so on. It sets forth what needs to be stated. But what needs to be stated that you're relying on is the amount of the debt. So how could something that is misleading as to the amount of the debt, and therefore violate G, not also violate E, which says you can't mislead? And what was at issue there was precisely the amount of the debt. Why would the two have different standards? An initial letter, if it didn't set forth the amount of the debt in a meaningful fashion, would violate 1692G and 1692E. But there are more obligations concerning an initial communication in order to fulfill the requirements of 1692G. And we've found that since Carlin, we've seen letters nationwide that, especially one example is the student loan industry, that collection agencies, when they're collecting on a student loan, they will set forth information as to attorney's fees and interest and costs. And we feel that while, yes, the standard is the least sophisticated consumer, but we are talking about consumers who have received credit card debt. And this court said in Coleman v. Jackson that the statute protects the gullible as well as the shrewd. So everyone should have meaningful disclosure in the initial communication as to how much is owed and to be able to determine how much in the future. Thank you both. Well, reserve decision.